**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MATTHEW WILLIAM SCHWIER,<br>Defendant. | Case No. 3:17-cr-00095-SLG |

**ORDER ON MOTION FOR MODIFICATION OF SUPERVISED RELEASE CONDITIONS**

Before the Court at Docket 560 is Defendant Matthew William Schwier's Motion for Modification of Supervised Release Conditions. The Government has not filed a response. At Docket 562, the U.S. Probation Office for the District of Alaska prepared a memorandum indicating that the Probation Officer generally opposes the modifications requested by Mr. Schwier but does not oppose the requested modification regarding polygraph examinations and Mr. Schwier's Fifth Amendment rights, although the officer maintains it is "categorically unnecessary."[1] Mr. Schwier filed Objections to Probation Memorandum at Docket 564.

On June 30, 2023, this Court sentenced Mr. Schwier to 37 months' imprisonment and seven years of supervised release after he pled guilty to

[1] Docket 562 (SEALED) at 4.

possession of child pornography.[2] As relevant to Mr. Schwier's motion, at sentencing the Court imposed several special conditions of supervised release, including

> 2. The defendant shall not initiate contact with any person under the age of 18 years without adult supervision, excluding his/her own minor children, nor attempt contact except under circumstances approved in advance and in writing by the probation officer in consultation with the defendant's treatment provider. If a minor, other than his own children, initiates contact, the defendant must notify the probation officer.
>
> . . .
>
> 6. The defendant shall participate in a program of sex offender assessment and treatment, as directed by the probation officer, until such time as he/she is released from the program. This assessment and treatment may include physiological testing such as polygraph to assist in planning, case monitoring, and supervision. At the direction of the probation officer, the defendant may be required to pay for all or a portion of any treatment program. Any refusal to submit to such assessment or tests as scheduled is a violation of the conditions of release. The defendant shall waive his right of confidentiality in treatment and sign any necessary releases for any records imposed as a consequence of this judgment to allow the supervising United States Probation Officer to review the defendant's course of treatment and progress with the treatment provider(s). Following completion of any sex offender treatment program, the defendant shall continue to submit to polygraph examination at the direction of the probation officer to assist with monitoring any perceived risks of danger to the community.
>
> 7. The defendant shall not possess or use a computer or internet capable device without the expressed written permission of his probation officer. If authorized by the probation officer to have access to a computer device, the defendant shall agree to and allow the installation of monitoring software/hardware on the

[2] Docket 537 at 1-3 (Am. Criminal J.).

> device(s) and agree to participate in a computer monitoring program, at the defendant's expense. The defendant shall permit routine inspection of his computer device(s) or any other computer system maintained by the defendant to include, but not limited to, external hard-drives, thumb drives, gaming systems, and/or cloud storage under his control. The inspection shall be no more intrusive than is necessary to ensure compliance with the defendant's conditions of supervision. Failure to strictly adhere to this condition may be grounds for revocation.[3]

On March 10, 2026, Mr. Schwier began his term of supervised release.[4] Mr. Schwier's term of supervised release is set to expire on March 10, 2033.

## LEGAL STANDARD

Pursuant to 18 U.S.C. § 3583(e)(2), a court

> may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision[.]

In deciding whether to modify a condition of supervised release, a district court must consider the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).[5] Those factors are: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence, protect the public from further crimes by the defendant, and provide the defendant with

---

[3] Docket 537 at 5.

[4] Docket 562 (SEALED) at 1.

[5] 18 U.S.C. § 3583(e).

needed training, care, or other correctional treatment; the sentencing range established by the United States Sentencing Guidelines and pertinent policy statements; the need to avoid unwarranted sentencing disparities; and the need to provide restitution.

The Introductory Commentary to United States Sentencing Guideline Part D provides that a court should conduct an individualized assessment when determining whether to impose a term of supervised release and, if one is imposed, the appropriate length of supervised release and its terms. With an individualized assessment, a "court can 'assure that [those] who will need post-release supervision will receive it' while 'prevent[ing] probation system resources from being wasted on supervisory services for releasees who do not need them.'"[6] Federal Rule of Criminal Procedure 32.1 provides the procedural mechanism for modifying terms of supervised release.

## DISCUSSION

Mr. Schwier seeks modification of the above-mentioned terms of supervised release on various grounds. First, he contends that Special Condition No. 2 should be modified to expressly allow him unsupervised contact with his minor grandchildren, nieces, and nephews if the minor's parent or guardian consents because it currently "involves greater deprivation of liberty than is necessary to

[6] U.S. Sent'g Comm'n Guidelines Manual Ch.5, Pt.D, intro. comment. (Nov. 2025) (quoting S. Rep. No. 98-225, at 54 (1983)).

achieve the goals of supervision."[7] Mr. Schwier's daughter is expected to give birth in November, and Mr. Schwier intends to travel to Texas where his daughter lives to visit her and the baby; he may also then visit his sister and 8-year-old nephew who also reside in Texas.[8] Mr. Schwier maintains that his "probation officer has requested that Mr. Schwier complete a lengthy safety plan and risk assessment before probation will consider allowing Mr. Schwier to initiate contact with either his nephew or grandchild."[9] He asserts that Special Condition No. 2 infringes upon his fundamental right to associate with his family members and therefore the Court "must inquire whether the limitation[ ] [is] primarily designed to affect the rehabilitation of the probationer or insure the protection of the public."[10]

In support of his position that the condition infringes on his right to familial association, Mr. Schwier cites *United States v. Wolf Child*.[11] In that case, the district court had imposed a condition of supervised release that prohibited the defendant from associating with his own minor children and with his fiancée without the approval of probation.[12] The Ninth Circuit "concluded that these 'intimate'

---

[7] Docket 560 at 4.

[8] Docket 560 at 4-5.

[9] Docket 560 at 4.

[10] Docket 560 at 4-5 (alterations in original) (quoting *United States v. Bee*, 162 F.3d 1232, 1235 (9th Cir. 1998)).

[11] Docket 560 at 5 (citing 699 F.3d 1082, 1099 (9th Cir. 2012).

[12] *Wolf Child*, 699 F.3d at 1091, 1094.

familial relationships implicate a particularly significant liberty interest, just as [the Circuit] had held earlier in *Napulou* that one's relationship with a 'life partner' implicates such an interest."[13] The Court added that "[t]he fundamental liberty interest in having contact with one's children is equally, if not more, significant."[14] The Ninth Circuit held that the condition infringed on the defendant's "particularly significant liberty interests" and that in imposing the condition the district court erred by failing to "point to the evidence in the record on which it relie[d] and explain how on the basis of that evidence the particular restriction is justified" "at the time it impose[d] the restrictive condition on the exercise of a particularly significant liberty interest."[15]

In *United States v. Magdaleno*, the Ninth Circuit explained that "*Wolf Child* does not create a 'particularly significant liberty interest' in all familial relationships" and the Circuit's "conclusion and analysis in *Wolf Child* are necessarily limited to the kind of intimate familial relationships implicated in that case."[16] Indeed, in *Magdaleno*, the Circuit held that, while the Court "[did] not rule out the possibility that a sibling relationship could, under certain circumstances, give rise to a particularly significant liberty interest," the defendant had "offer[ed] no evidence to

---

[13] *United States v. Magdaleno*, 43 F.4th 1215, 1223-24 (9th Cir. 2022) (first quoting *Wolf Child*, 699 F.3d at 1091-95; and then quoting *United States v. Napulou*, 593 F.3d 1041, 1047 (9th Cir. 2010)).

[14] *Wolf Child*, 699 F.3d at 1091.

[15] *Id*. at 1091-92, 1094 (citing *Napulou*, 593 F.3d at 1047).

[16] *Magdaleno*, 43 F.4th at 1224.

suggest that any of his sibling relationships is comparable, in its level of support and intimacy, to a relationship with one's child, 'life partner,' or fiancée."[17] Therefore, the Ninth Circuit held that the district court did not err when it imposed a condition of supervised release prohibiting the defendant from associating with members of particular gangs even though the condition would prohibit defendant from associating with siblings and half-siblings who might belong to one of those gangs.[18]

The same is true here. Mr. Schwier contends that the condition must be modified because it infringes on his right to associate with his minor grandchild and nephew, not with his minor children as in *Wolf Child*. But the right to associate with one's grandchild or nephew is not a fundamental constitutional right.[19] Further, Mr. Schwier has presented no evidence that his relationship with his unborn grandchild or his 8-year-old nephew is comparable to a relationship with his own minor children, life partner, or fiancée.

Further, Special Condition No. 2 does not prohibit Mr. Schwier from interacting with his future grandchild or nephew; rather, the condition requires that Mr. Schwier get approval in advance from his Probation Officer. While Mr. Schwier

---

[17] *Id.* at 1219, 1224.

[18] *Id.*

[19] *Cf. Troxel v. Granville*, 530 U.S. 57, 61-73 (2000) (holding that a Washington State law that permitted any third-party to petition for visitation rights with a minor violated the minor parent's Due Process rights where grandparents had petitioned for visitation under the state law and parent objected).

complains that in order to get such approval, he must "complete a lengthy safety plan and risk assessment," he does not specify what about that process is particularly onerous.[20] The Probation Officer indicates that the Risk Plan form is two-and-a-half pages long and the only Risk Plan Mr. Schwier submitted was "for unrestricted access to his future grandchild, which did not come close to meeting the requirements of the assignment."[21] Based on this limited record, the Court finds that the risk assessment and safety plan process is not an insurmountable barrier to Mr. Schwier obtaining the Probation Officer's approval to have contact with his future grandchild and minor nephew. If it proves to be, then Mr. Schwier can seek of modify the condition at that time.

The Court therefore finds that Special Condition No. 2 does not infringe on a particularly significant liberty interest and the Court denies Mr. Schwier's request for modification of Special Condition No. 2 on that basis.

Mr. Schwier also maintains that Special Condition No. 2 must be modified because it requires him "to actively refrain from going to grocery stores when minors are likely to be present, and to avoid frequenting restaurants where minors may be employed."[22] In Mr. Schwier's view, requiring him to obtain permission

---

[20] Docket 560 at 4.

[21] Docket 562 (SEALED) at 1. Of note, Alaska Statute 11.51.100 makes it a crime to leave a child in the sole custody of a registered sex offender who is not the child's parent, guardian, or lawful custodian.

[22] Docket 560 at 6.

before initiating contact with a minor in an "ordinary commercial context[] is excessive."[23] He also suggests that Special Condition No. 2 is vague.[24] He then suggests modifying Special Condition No. 2 "to prohibit him from initiating contact with minors without prior notice and permission from the minor's parent or legal guardian" and without notifying the "parent or legal guardian of his conviction in the instant offense."[25] Mr. Schwier asks that "[t]his provision shall not apply to Mr. Schwier's own minor family members, or to persons such as waiters, cashiers, ticket vendors, etc., whom defendant must interact with in order to obtain ordinary and usual commercial services."[26]

As explained above, the Court denies Mr. Schwier's request to modify Special Condition No. 2 to permit unrestricted contact between Mr. Schwier and his future grandchild and minor nephew. As to whether the condition is vague, "[c]onditions of supervised release . . . must be interpreted consistently with the 'well-established jurisprudence under which we presume prohibited criminal acts require an element of *mens rea*.'"[27] In *United States v. Napulou*, the Ninth Circuit applied this principle to hold that a condition of supervised release—that prohibited "regular contact with anyone having a misdemeanor or felony conviction, without

---

[23] Docket 560 at 6-7.

[24] Docket 560 at 7.

[25] Docket 560 at 7.

[26] Docket 560 at 7.

[27] *Napulou*, 593 F.3d at 1045 (quoting *United States v. Vega*, 545 F.3d 743, 750 (9th Cir. 2008)).

prior permission of the Probation Office"—"[p]roperly construed, . . . regulates only *knowing* contact with persons with misdemeanor convictions."[28] Because the condition "proscribe[d] only 'regular contact,' any 'incidental contacts' without permission do not violate it."[29] Therefore, the Circuit Court held that the condition of supervised release was not impermissibly vague.

In so holding, the Ninth Circuit cited *United States v. Soltero*, in which the Circuit upheld as valid a condition prohibiting the defendant from "associating" with "any known member of any criminal street gang" because "association" does not include inadvertent incidental contacts.[30] The Court finds that similar reasoning applies here. Special Condition No. 2 provides that "[t]he defendant shall not initiate contact with any person under the age of 18 years without adult supervision . . . ." The Court finds that "initiate contact" does not include inadvertent incidental contact with a minor at a grocery store or at a business where a minor is employed. Therefore, Special Condition No. 2 is not impermissibly vague. The Court therefore denies Mr. Schwier's request to modify the condition on that basis.

Next. Mr. Schwier maintains that the "Probation Office is unreasonably refusing to allow Mr. Schwier to possess a personal computer" and therefore Special Condition No. 7 should be modified to only require him to disclose his

[28] *Id.* at 1044-45 (emphasis in original).

[29] *Id.* at 1045.

[30] *Id.*; *United States v. Soltero*, 510 F.3d 858, 866 (9th Cir. 2007).

possession or use of an internet capable device rather than requiring permission from his Probation Officer.[31] Mr. Schwier also asks that electronic devices necessary for his employment be exempted from the condition's requirement that he allow monitoring software to be installed on any computer he uses or possesses.[32]

The Probation Officer's memorandum provides that Mr. Schwier was approved to possess an internet capable smartphone in April 2026, after approximately one month on supervised release, and that the Probation Officer told Mr. Schwier that, after a period of compliance, the officer would consider approving a second internet capable device.[33] But the approval of a second device has not yet occurred due to Mr. Schwier's "lack of progress in treatment, multiple failed polygraphs, and demanding nature."[34] And the Probation Officer states that "Mr. Schwier has previously been given permission to access a computer at his prior employment after the undersigned officer was able to speak with his employer and assess and address any potential risk and mitigating factors."[35]

The Court finds that, at this time—only five months into a seven-year supervised release term—the Probation Office has not unreasonably withheld

---

[31] Docket 560 at 9.

[32] Docket 560 at 9.

[33] Docket 562 (SEALED) at 2-3.

[34] Docket 562 (SEALED) at 3.

[35] Docket 562 (SEALED) at 3.

approval of a second internet capable device, specifically a computer. Mr. Schwier seeks to modify this condition to allow him to possess an unlimited number of internet capable devices so long as he discloses each device to his probation officer. The Court finds that condition as currently written remains appropriate considering Mr. Schwier's offense, his lack of treatment progress to date, and his failed polygraphs. And, as explained below, the Court directs Mr. Schwier and the Probation Office to explore the availability of other sex offender treatment programs, which should provide the Probation Office with additional insight as to whether to approve a second internet capable device. The Court therefore denies Mr. Schwier's requested modification to Special Condition No. 7.

Next, Mr. Schwier seeks modification of Special Condition No. 6, which requires him to participate in sex offender treatment as directed by the probation officer and to submit to a polygraph examination at the direction of the probation officer either as part of sex offender treatment or after the completion of treatment "to assist with monitoring any perceived risks of danger to the community."[36] Mr. Schwier contends that this condition "infringes on [his] Fifth Amendment privilege against compelled self-incrimination, as it permits probation to revoke his supervised release if he declines to answer questions about past criminal and sexual conduct."[37] Mr. Schwier acknowledges that this Court stated on the record

[36] Docket 537 at 5.

[37] Docket 560 at 10.

at sentencing that Mr. Schwier's invocation of his Fifth Amendment right would not be grounds for revocation pursuant to the polygraph requirement.[38] But Mr. Schwier maintains that he "reasonably expects that probation will not abide by the court's advisement, and that he will face revocation if he fails to answer questions about prior sexual and criminal history."[39] The Probation Officer's memorandum states that "valid invocation of Fifth Amendment rights would never result in revocation proceedings" and the "officer is not opposed to the proposed modification to Special Condition #6 if the Court deems appropriate, although it would be in this officer's opinion categorically unnecessary."[40]

The Court disagrees with Mr. Schwier that it is reasonable to expect the Probation Office to defy this Court's instruction; indeed, the Probation Officer expressly acknowledges that a valid invocation of the Fifth Amendment would never be grounds for a revocation petition. Therefore, the Court denies Mr. Schwier's request to modify Special Condition No. 6 on that basis.

Lastly, Mr. Schwier requests that Special Condition No. 6 be modified such that he can choose a different sex offender treatment program than the "one treatment program which has been made available to him."[41] Mr. Schwier's motion

---

[38] Docket 560 at 10.

[39] Docket 560 at 10.

[40] Docket 562 (SEALED) at 4.

[41] Docket 560 at 11.

states that "[u]ndersigned counsel has confirmed that other treatment programs are available but has not received confirmation from probation as to whether those programs will be approved."[42] Both Mr. Schwier and the Probation Officer acknowledge that the Probation Office contracts with a primary provider who provides individual treatment services, who in turn contracts with two additional providers who provide group treatment services.[43] Mr. Schwier was placed in a group treatment program.[44]

The Court finds that at this time modification of Special Condition No. 6 to permit Mr. Schwier to select a sex offender treatment program without approval of the Probation Office is not warranted. Rather, the Court directs Mr. Schwier and the Probation Office to confer regarding available treatment programs and to inform the Court as to whether Mr. Schwier and the Probation Officer can agree as to a treatment program as ordered below. As such, the Court denies Mr. Schwier's request for modification of Special Condition No. 6 on that basis.

Because the Court finds that modification of Mr. Schwier's terms of supervised release is not warranted at this time, the Court does not consider whether modification is supported by the applicable 18 U.S.C. § 3553(a) factors.

---

[42] Docket 560 at 13.

[43] Docket 560 at 12 ("Mr. Schwier's probation officer informed the court at sentencing that the U.S. Probation Office contracts with one specific provider, which then subcontracts to three other providers who are certified to conduct sex offender treatment."); Docket 562 (SEALED) at 3.

[44] Docket 562 (SEALED) at 3.

## CONCLUSION

In light of the foregoing, Defendant's Motion for Modification of Terms of Supervised Release at Docket 560 is **DENIED without prejudice to renewal**. Mr. Schwier and the Probation Office are directed to confer regarding potential sex offender treatment programs and provide a joint status report **within 30 days of the date of this order** informing the Court as to whether the parties have agreed to a program or, if not, which program each party would propose.

DATED this 18th day of August 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE